

**FILED**

**NOV 1 3 2002**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SIERRA CLUB )
85 Second Street, Second Floor )
San Francisco, CA 94105-3441 )
)
Plaintiff, )
)
v. )
)
CHRISTINE TODD WHITMAN )
Administrator, )
United States Environmental Protection )
Agency, )
)
Defendant. )
_____ )

CASE NUMBER  1:02CV02235

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 11/13/2002

## APPLICATION BY PLAINTIFF SIERRA CLUB FOR PRELIMINARY AND PERMANENT INJUNCTION

Pursuant to Rule 65, Federal Rules of Civil Procedure, and LCvR 65.1, Plaintiff Sierra Club (the Club) hereby asks the Court to enter a Preliminary Injunction directing the Administrator of the United States Environmental Protection Agency ("the Administrator" or "EPA") to publish, not later than January 27, 2003, a Federal Register Notice that announces, consistent with the Clean Air Act, 42 U.S.C. §§7509(c) & 7511(b)(2):

    a. a final determination either that the Washington, D.C., serious ozone nonattainment area, attained the national ambient air quality standards ("NAAQS" or "standards") for ozone by the applicable attainment date of November 15, 1999, or that such area did not attain such standards by such date; and

    b. an identification of the appropriate reclassification of the area, if the determination is that the area did not attain the standards by the applicable attainment date.

1

4

Sierra Club further asks the Court for a preliminary injunction directing EPA to publish:  a) within 45 days of the Court's order, a Federal Register notice, consistent with 42 U.S.C. §§7410(k)(3), containing EPA's proposed approval and disapproval action on the state implementation plan submittals for the Washington area identified in Plaintiffs' Complaint; and b) within 120 days of the Court's order, a Federal Register notice, consistent with 42 U.S.C. §7410(k)(3), containing EPA's final approval and disapproval action on such plan submittals.

Sierra Club requests that the Court schedule oral argument on this application within 20 days, as provided in LCvR 65.1(d). Expedited treatment of this matter is warranted because, as further explained below, this suit seeks action to remedy ozone pollution that presents an imminent and substantial health threat to hundreds of thousands of people in metropolitan Washington.  The EPA delays complained of herein flout explicit statutory deadlines for the protection of public health:  deadlines that expired years ago.  The case does not require presentation of witnesses and can be resolved based on the law and undisputed facts.  A hearing on the application should therefore require no more than an hour of the Court's time.

Sierra Club further asks the Court to advance and consolidate the hearing on the merits of Sierra Club's claims with the hearing on the application for preliminary injunction, pursuant to Federal Rule of Civil Procedure 65(a)(2).  The law and facts underlying the request for preliminary relief are identical to those underlying the claim on the merits, and the case does not raise any complex issues requiring separate consideration of preliminary and permanent relief.  Advancement and consolidation is also justified by the urgency of the health threat from ozone pollution in the Washington area, as further described below.

MEMORANDUM OF POINTS AND AUTHORITIES

**Introduction**

In this application, Sierra Club asks the Court to order the Administrator of the U.S.

Environmental Protection Agency ("the Administrator" or "EPA") to take actions explicitly

mandated by the Clean Air Act to protect public health from ozone pollution in metropolitan

Washington.   Specifically the Club asks the Court to order EPA to determine whether the

Washington area timely attained clean air health standards for ozone, and reclassify the area to a

more stringent air pollution classification if it did not.   Reclassification would trigger requirements

under the Act for stronger air pollution control requirements throughout metropolitan Washington.

Sierra Club further asks the Court to order EPA to take final approval/disapproval action on ozone

control plans submitted by Maryland, Virginia, and the District of Columbia (states) for the

Washington area.   Disapproval of such plans would trigger requirements for the adoption of new,

stronger clean air plans to reduce ozone pollution, and would start 18 and 24-month clocks for the

imposition of sanctions if the states fail to remedy plan defects.  As further discussed below, EPA's

failure to take these actions violates express deadlines in the Act, and threatens the health of the 3.9

million people living  in the Washington area.

By letter postmarked September 5, 2002, Sierra Club provided notice to EPA, pursuant to

§304(b)(2) of the Act, of the Club's intent to sue the Administrator to enforce the

nondiscretionary duties described herein.  Exhibit (Exh.) 1.  More than 60 days has passed since

service of that letter, and EPA has still not performed the relevant duties.  Accordingly, this

Court has jurisdiction to order EPA to act, pursuant to §304(a)(2) of the Act, 42 U.S.C.

§7604(a)(2).   That section authorizes citizen suits in the district courts to compel performance

by the Administrator of nondiscretionary duties under the Act.  Id. §7604(a).  Sierra Club has

standing to sue because, among other things, it has members living in the Washington area whose health and welfare are adversely affected by unhealthful ozone pollution levels in their community. Exhs. 2-6. As further described below, EPA's failure to act as complained of herein prolongs the exposure of Club members to such unhealthful pollution, illegally waives requirements of the Act designed to protect them from such pollution, and deprives them of health, welfare and procedural protections guaranteed under the Act.

## II.   STATEMENT OF FACTS

### A.   Background

The metropolitan area of Washington, D.C., has violated federal health standards for ground-level ozone for more than 20 years. 40 C.F.R. §§ 81.309, .321, .347 (2002 & prior versions). Ozone, a principal component of urban smog, is a severe lung irritant even to healthy adults. 66 Fed. Reg. 5002, 5012/3 (2001). It can cause shortness of breath, chest pains, increased risk of infection, aggravation of asthma, and significant decreases in lung function. Id. Elevated ozone levels have been linked to increased hospital admissions and emergency room visits for respiratory causes. 65 Fed. Reg. 6698, 6707/1 (2000). Ozone presents a special health risk to small children, the elderly, persons with lung ailments, and adults who are active outdoors. Id. Populations particularly at risk from ozone in the Washington area include:

* 736,400 children under the age of 13

* 225,700 asthmatics, including 53,200 children with asthma

* 210,000 residents with other chronic or persistent respiratory diseases, such as chronic bronchitis and emphysema

* 336,000 residents over the age of 65; and

* 185,000 – 370,000 otherwise healthy individuals who are especially sensitive to ozone;

Exh. 7.

Ozone is formed in the atmosphere when oxides of nitrogen (NOx) and volatile organic compounds (VOCs) are emitted into the air in the presence of sunlight. H.R. Rep. No. 101-490, pt.1 at 202 (1990) ("House Report"). Major sources of ozone forming emissions include industrial facilities, power plants, and motor vehicles. Id. 202-03.

The 1970 Clean Air Act, as amended in 1977 and 1990, was enacted specifically to attack the kinds of health threats presented by ozone pollution. Pursuant to the Act, the United States Environmental Protection Agency (EPA) has adopted National Ambient Air Quality Standards (NAAQS) for ozone and other contaminants as pollution limits necessary to protect public health and welfare. 42 U.S.C. §7409; 40 C.F.R. Part 50. EPA designates communities as "attainment" or "nonattainment" areas based on whether they meet the standards for a particular pollutant. 42 U.S.C. §7407(d). Ozone nonattainment areas are further classified as marginal, moderate, serious, severe or extreme, depending on the severity and persistence of the ozone problem. Id. §7511(a), (b)(2). Since 1990, the Washington area has been classified as a "serious" ozone nonattainment area. 40 C.F.R. §§ 81.309, .321, .347 (2002).

For each nonattainment area, states must submit to EPA a state implementation plan ("SIP" or "plan") meeting requirements set forth in Part D of Subchapter I of the Act (hereinafter, "Part D"), 42 U.S.C. §§7501-7515. Among other things, this SIP must provide for attainment of the standards "as expeditiously as practicable," but no later than specific deadlines set forth in the Act. Id. §§ 7410 , 7502, 7511. The plan must also ensure "reasonable further progress" (RFP) by providing for annual incremental pollution reductions until attainment is achieved. Id. §7501(1),7502(c)(2). If an ozone nonattainment area fails to meet its attainment deadline, it must be reclassified ("bumped up") to a higher classification. Id. §7511(b)(2). Areas with higher

classifications are given more time to attain the standard, but must implement more stringent control measures. Id. §7511(a)(1), 7511a.    The Act explicitly requires EPA to publish, within six months of the applicable attainment date, a determination of whether an ozone nonattainment area attained the standard by that date.  Id. §7509(c), 7511(b)(2).  If the determination is that the area did not timely attain the standard, such publication must also identify the appropriate reclassification of the area.  Id.

In the case of "serious" nonattainment areas like Washington, the outside attainment deadline was November 15, 1999.  Id. §7511(a)(1).  Therefore, EPA was under a nondiscretionary duty to publish a determination by May 15, 2000 whether the area timely attained the standard, and to announce reclassification of the area to "severe" if it did not timely attain.[1]  Id. §§7509(c), 7511(b)(2).  Severe areas have an outside attainment deadline of November 15, 2005, but must implement more stringent pollution controls (specified in the Act) than serious areas.  Id. §7511(a)(1), 7511a(d).  Among other things, severe areas must extend the Act's strong "new source review" requirements to more industries, require new industrial emissions to be offset by greater reductions from other sources, and adopt measures to offset growth in exhaust from cars and trucks. Id. §7511a(d).

In addition to demonstrating timely attainment, all nonattainment area plans must provide for implementation of all "reasonably available control measures [RACM] as expeditiously as practicable."  Id. §7502(c)(1).  Plans for serious and above areas must also assure specific annual

---

[1] Section 181(b)(2)(A) of the Act requires that reclassification be to the higher of:  i)  the next higher classification or ii) the classification applicable to the area's design value.  After "serious," the next higher classification is "severe."  42 U.S.C. §7511(a)(1)(Table 1).  There is only one classification higher than "severe" – namely, "extreme" –  but §181(b)(2)(A) bars EPA from reclassifying an area to "extreme" under these provisions.  Therefore, the only possible reclassification of a serious area that EPA can identify under §181(b)(2) is to "severe."

reductions in ozone forming emissions. In particular, such plans must include a "rate of progress" (ROP) plan with control measures adequate to ensure 3% annual reductions in ozone forming emissions, averaged over each three year period after 1996 until the attainment date. 42 U.S.C. §7511a(c)(2)(B). Implementation plans must further include "contingency" measures that will kick in automatically if the plan fails to produce required annual reductions or timely attainment. Id. §§7502(c)(9), 7511a(c)(9).

The Act further sets forth mandatory deadlines for EPA action on implementation plans and plan revisions submitted by states. Pursuant to §110(k)(1) of the Act, 42 U.S.C.§7410(k)(1), the Administrator must determine within sixty days whether a submitted SIP revision is "complete" – i.e., whether the submission meets certain minimum criteria promulgated under, §110(k)(1)(A) of the Act, 42 U.S.C. §7410(k)(1)(A). These criteria are limited to specifying information the submission must contain to enable EPA to determine whether the plan complies with the Act. Id. If the Administrator does not make this completeness determination within 6 months of receipt of the submission, then the plan or plan revision is deemed complete by operation of law. 42 U.S.C. §7410(k)(1)(B). Within twelve months after a SIP submission is found or deemed to be complete, EPA must act on the submission in accordance with §110(k)(2) & (3) of the Act, 42 U.S.C. §7410(k)(2) & (3). Thus, within a maximum of 18 months after plan submittal (6 months for plan to be deemed complete, plus 12 months for EPA action), EPA must take final action on the submittal. Such action must consist of one of the following actions on such submittal (hereinafter, collectively referred to as "approval/disapproval actions"): approve as a whole; disapprove as a whole; or approve in part and disapprove in part . 42 U.S.C. §7410(k)(2)&(3). Disapproval of a plan, in whole or in part, triggers clocks for the imposition of sanctions and for adoption of federally imposed clean air measures, as well as restrictions on the

addition of new road projects to regional transportation plans. Id. §§7410(c), 7509(a)&(b) ; 40 C.F.R. §93.120(a) (2001). States can avoid sanctions by correcting their plan deficiencies before the sanction clocks run out. 42 U.S.C. §7509(a).

### B. The Washington ozone SIP

Pursuant to the 1990 Amendments to the Act, the Washington metropolitan area was classified, effective November 15, 1990, as a "serious" ozone nonattainment area, with an outside attainment deadline of November 15, 1999. 40 C.F.R. §§ 81.309, .321, .347 (2002). The nonattainment area (herein, "Washington area") includes: the District of Columbia; Montgomery, Prince Georges, Charles, Calvert and Frederick counties in Maryland; and Fairfax, Arlington, Loudon, Prince William and Stafford counties in Virginia (as well as cities within the same region, such as Alexandria and Fairfax) . Id. The Act required the District of Columbia (District or D.C.), Maryland and Virginia (hereinafter, collectively "states") to submit the above-described plan provisions for the Washington area, including the attainment and rate-of-progress demonstrations, not later than November 15, 1994. 42 U.S.C. §7511a(b)(1)(A). As indicated above, EPA was required to approve or disapprove these plan within 18 months of submittal. Id. §7410(k)(2).

Neither the states nor EPA followed this legally mandated path. The states did not even submit the rate of progress (ROP) plans (referred to by EPA as the "Phase I" plans) until November and December of 1997, and did not submit their attainment demonstration and other plan provisions (referred to by EPA as the "Phase II" plans) until April 1998. 66 Fed. Reg. 586 (2001). Exh. 8. As finally submitted, the plans (jointly prepared by the states through the Metropolitan Washington Council of Governments) did not provide for attainment of the ozone standard by the statutory attainment deadline of November 15, 1999. Sierra Club v. EPA, 294

F.3d 155, 159 (D.C. Cir. 2002), attached as Exh. 9. Instead, the states asked EPA to extend the

attainment deadline by six years, to November 15, 2005, but **without** reclassifying the area to

"severe." Id . The plans also did not provide for 3% annual reductions in emissions after 1999 as

required by the Act's ROP provisions, did not provide for additional "reasonably available"

control measures (RACM), and did not contain the contingency measures mandated by the Act.

Id. 159, 164,

The November 15, 1999 attainment deadline for the Washington area came and went

with the area still violating the ozone standard and lacking approved attainment or progress

plans. EPA did not publish a determination by May 15, 2000 whether the area had timely

attained the standard, and has not done so to this day. Instead, on January 3, 2001, EPA

published a Federal Register notice granting the states' request to extend the attainment date to

2005, without reclassifying the area to "severe." 66 Fed. Reg. 586 (2001). In the same notice,

EPA fully approved the states' ROP ("Phase I") and attainment ("Phase II") plans for the

Washington area.

EPA took these actions despite strenuous objections by Sierra Club and others filed

during the public comment periods preceding these actions. The Club and others argued at both

the state and federal levels that EPA had no authority to extend the attainment date without

reclassifying the area to severe. 66 Fed. Reg. 591-603. They further argued that the states' plans

failed to assure the legally required 3% annual reductions in pollutant emissions after 1999,

failed to provide for adoption of all reasonably available control measures (RACM) as mandated

by the Act, and failed to include contingency measures as required by the Act. Id. 603, 607-13,

615-16. EPA brushed aside all of these objections. Id.

Sierra Club filed a timely petition for review in the D.C. Circuit challenging EPA's extension of the attainment date and approval of the states' Phase I and II plans.  On July 2, 2002, the D.C. Circuit granted the petition, holding that EPA acted illegally in extending the ozone attainment date for the Washington area, and in approving the plans.  Sierra Club v. EPA, 294 F.3d 155 (D.C. Cir. 2002), attached as Exh. 9.  The Court held that EPA could not extend the attainment date without reclassifying the area to severe.  Id. 160-62.  It further agreed with Sierra Club that: 1) the Phase I (ROP) plans were deficient because they failed to provide for emission reductions after 1999; 2) the attainment plans were deficient because the states had failed to adequately consider additional RACMs; and 3) both the ROP and the attainment plans were deficient because they lacked contingency measures as required by the Act. Id.163-64. The Court vacated EPA's approval of the plans, and remanded the matter to EPA.  Id. 164.

Although the Court issued its decision more than four months ago, EPA has still not taken final action to determine whether the Washington area attained by the applicable attainment date, and announcing the appropriate reclassification of the area.  Moreover, the Court's vacatur of EPA's approval action on the SIPs leaves EPA's duty to take approval/disapproval action on those plans unfulfilled.  All of those plans were submitted more than 18 months ago, but EPA has not even proposed action on those plans since the Court's remand.

Meanwhile, the Washington area in 2002 suffered from the worst ozone pollution in more than a decade, in terms of exceedances of the 1-hour standard.  Exh. 10 at 6.  According to the Metropolitan Washington Council of Governments (MWCOG), the designated clean air planning agency for the Washington area, there were nine "code red" days in the summer of 2002, more than in any year since before 1992.  Id.  On all of these days the 1-hour ozone standard was

exceeded and the air was labeled by MWCOG as "unhealthful." Id. at 2, 4. There were another 19 "code orange" days, when air pollution levels were identified as unhealthful for children, persons with lung disease, and other sensitive persons. Id. The situation was even worse when measured against EPA's new, more protective 8-hour ozone standard.[2]  That standard was exceeded on 36 days in 2002, including two "code purple" days when the air was deemed by MWCOG to be "very unhealthy." Id. at 2, 5.

Plaintiff Sierra Club has more than 15,000 members in the Washington area whose health and welfare are threatened by unhealthful ozone levels in their community. Exhs. 2-6. The Club contends that the EPA delays at issue here illegally waive requirements of the Act designed to protect Club members from such pollution, and deprives them of health, welfare and procedural · protections guaranteed under the Act.

·    Among other things, Sierra Club contends that if EPA were required to make an attainment/reclassification determination, the agency would have no choice but to find that the Washington area did not timely attain the ozone standard, based on the agency's own air quality database.  Likewise, the Club contends that if EPA were required to take approval/disapproval action on the states' plans, the agency would have no choice but to disapprove the plans because the D.C. Circuit has specifically ruled that the plans do not meet all the requirements of the Act.  By delaying these actions, EPA is therefore delaying the stronger pollution controls, sanctions, and other measures specified in the Act to promote cleaner air in areas that fail to timely attain and fail

---

[2] Sierra Club is not seeking to enforce requirements related to the new 8-hour standard in this lawsuit, but evidence of 8-hour exceedances is plainly relevant to the health threat presented and the urgency of the problem.  According to EPA, the 1-hour standard is not sufficiently protective of human health.  See  American Trucking Assns. v. USEPA, 283 F.3d 355, 378-79 (D.C. Cir. 2002).  Thus, the public health urgency of reducing ozone pollution in the Washington area is even greater than indicated solely by violations of the 1-hour standard.

to adopt adequate plans.   Sierra Club accordingly asks this Court to order EPA to make the

attainment/reclassification determinations mandated by the Act, and to promptly take final

approval/disapproval action on the states' ozone plans for the Washington area, all by the date

certain deadlines proposed below.

> ### 1.  EPA's failure to timely publish a nonattainment and reclassification determination for the Washington area violates express mandates under the Act

The Administrator's delay here violates the Act's explicit directives. Her duty to publish

nonattainment determinations and reclassifications within 6 months of the attainment date is

unambiguous.  Section 179(c) of the Act provides in pertinent part as follows:

> (c) Notice of failure to attain
>     (1) As expeditiously as practicable after the applicable attainment date for any nonattainment area, **but not later than 6 months after such date, the Administrator shall determine, based on the area's air quality as of the attainment date, whether the area attained the standard by that date.**
>     (2)  **Upon making the determination** under paragraph (1), **the Administrator shall publish a notice in the Federal Register containing such determination** and identifying each area that the Administrator has determined to have failed to attain. . . .

42 U.S.C. § 7509(c)(emphasis added).

Likewise, section 181(b)(2) of the Act provides as follows for ozone nonattainment areas:

> (2) Reclassification upon failure to attain
>     (A) **Within 6 months** following the applicable attainment date (including any extension thereof) for an ozone nonattainment area, **the Administrator shall determine,** based on the area's design value (as of the attainment date), whether the area attained the standard by that date.  Except for any Severe or Extreme area, any area that the Administrator finds has not attained the standard by that date **shall be reclassified** by operation of law in accordance with table 1 of subsection (a) of this section to the higher of –(i) the next higher classification for the area, or (ii) the classification applicable to the area's design value . . .
>
>     (B) **The Administrator shall publish a notice in the Federal Register, no later than 6 months following the attainment date,** identifying each area that the Administrator has determined under subparagraph (A) as having failed to attain and identifying the reclassification, if any, described under subparagraph (A).

42 U.S.C. §7511(b)(2)(emphasis added).

This Court has twice ruled that the above-quoted provisions impose mandatory, nondiscretionary duties on the Administrator. In <u>Sierra Club v. Browner</u>, 130 F. Supp. 2d 78 (D.D.C. 2001), the Court held the above provisions of the Act imposed a nondiscretionary duty on EPA to determine, by a date certain, whether the St. Louis area timely attained the ozone standard and to publish that determination in the Federal Register. <u>Id.</u> at 95. In <u>Sierra Club v. Whitman,</u> Civ. 00-2206 (D.D.C. 7-10-02)(CKK/JMF) this Court held that the same provisions required EPA to publish an attainment and reclassification determination for the Birmingham, Alabama area. In both of these cases, the Court ordered EPA to make and publish the required determinations by date certain deadlines set forth in the Court's order.

The same relief is plainly warranted here. The November 15, 1999 attainment date for the Washington area has long since passed, but EPA has still not published final attainment and reclassification determinations for that area as mandated by the Act. See Federal Register vols. 64 - 67. An order directing EPA to perform its mandatory, nondiscretionary duty under the Act is therefore warranted.

### 2. EPA has failed to perform its mandatory duty to take final approval/ disapproval action on the implementation plans for the Washington area

Section 110(k)(2) of the Act expressly requires EPA to take final approval/disapproval action on state plan submittals no later than 12 months after those submittals are found or deemed to be complete. Because state plan submittals are deemed complete 6 months after submittal unless EPA finds them incomplete before then, the absolute maximum time allowed for EPA approval/disapproval action is 18 months after plan submittal. 42 U.S.C. §§7410(k)(1)(B), (k)(2). As EPA itself has stated: "Under the CAA, EPA is required to approve or disapprove a State's submission no later than 18 months following submission." 64 Fed. Reg. 70460, 70462 (1999).

See also NRDC v. EPA, 22 F.3d 1125, 1131, 1134, 1136 n.13 (D.C. Cir. 1994)(EPA has 14-18 months after plan submittal deadline to act on the submittal).

Here, the §110(k)(2) deadlines for EPA approval/disapproval action expired long ago. According to EPA itself, the ROP (Phase I) plans were initially submitted in November and December of 1997, with amendments submitted in May of 1999. 66 Fed. Reg. at 586. EPA found the initial ROP submittals to be complete by letters dated December 10, 1997, January 12, 1998, and January 14, 1998 to the District of Columbia, Virginia, and Maryland, respectively. Exh. 11. EPA found the ROP plan amendments to complete by letters dated July 14, 1999 to the District of Columbia and Maryland, and by letter dated July 26, 1999 to Virginia. Exh. 12. Because more than twelve months have expired since all of these completeness findings, EPA's final approval/disapproval action on the ROP plans is long overdue. Final approval/disapproval actions on the initial ROP submittals were due in December 1998 (for D.C. ) and January 1999 (for Maryland and Virginia). Even if measured from the completeness findings on the amendments, final approval/disapproval action was due in July of 2000.[3]

The attainment (Phase II) plans were initially submitted in April 1998, with the most recent supplements submitted in March 2000. 66 Fed. Reg. at 586. The plan revisions seeking extension of the attainment date were submitted in July and September 1999, with supplements submitted in February 2000. Id. Thus, all of these plans were initially submitted to EPA far more than 18

---

[3] Although the Court need not reach the issue here, submission of amendments and supplements to an already pending plan submission plainly cannot act to restart the clock on EPA's duty to act on the initial submittal. The Act contains no provision whatsoever for stopping or restarting that clock once triggered. To infer otherwise would allow states to wholly subvert the deadline for EPA approval/disapproval action by constantly submitting "supplements" and "amendments." The Court need not reach this issue here, however, in light of the fact that more than 12 months have expired since completeness findings on even the most recent ROP supplements and amendments, and more than 18 months have expired since submittal of the most recent

months ago – indeed, the initial attainment plan submittals were made more than 4 years ago.   Even if measured from the dates of amendment or supplementation, all of these plans were submitted far longer than 18 months ago.   EPA never found any of these submittals to be incomplete: To the contrary, the agency proposed approval of the attainment plans in December 1999, and finalized that approval in January 2001 (action that was subsequently vacated by the D.C. Circuit, as discussed below).   64 Fed. Reg. 70460 (12/16/99);  66 Fed. Reg. 586 (1/3/01).

EPA's approval of the ROP and attainment plans in January 2001 did not, however, discharge its approval/disapproval duty because that action was vacated by the D.C. Circuit.  Sierra Club v. EPA, 294 F.3d at 164 ("EPA's approval of the revised SIPs for the Washington Metropolitan Area is vacated, and this matter is remanded to the Agency for further consideration").   A vacated agency action is a nullity, that has no force and effect.  Alabama Power Co. v. EPA, 40 F.3d 450, 456 (D.C. Cir. 1994)(to vacate means to annul, render void, defeat, and deprive of force).   Once vacated, an action loses the ability to "spawn[] any legal consequences" United States v. Munsignwear, 340 U.S. 36, 41 (1950).  See also Kelso v. United States Department of State, 13 F. Supp. 2d 12, 17-18, 24 (D.D.C. 1998)(CKK)(vacatur deprives agency action of any validity). Thus, vacatur of EPA's approval action leaves unfulfilled the agency's duty to take final approval/disapproval action on the states' plans.[4]

EPA's duty to take timely approval/disapproval action is the same type of nondiscretionary duty enforced by this Court in the St. Louis and Birmingham cases.   Section 110(k)(2) of the Act

---

supplements to the attainment plans.
[4] In the D.C. Circuit case, Sierra Club asked the Court to not only vacate EPA's approval of the states' plans, but also to order EPA to disapprove the plans.  The D.C. Circuit did not address the latter request at all.  294 F.3d at 164.  Moreover, the instant case presents a completely separate claim under §304 of the Act to compel EPA performance of a nondiscretionary duty, a claim that was not (and could not have been) filed in the D.C. Circuit.

provides that EPA "shall act " on plan submissions within the required 18 month time frame, by

taking the approval/disapproval action specified in §110(k)(3).  42 U.S.C. §7410(k)(2), (3).

Because EPA has failed to take the required action, a compliance order from this Court is

warranted.

### 3. The Court should issue a mandatory injunction requiring the EPA Administrator to publish the required attainment/reclassification determination and approval/disapproval action forthwith

#### A.  A balancing of the equities is not required

The traditional test for injunctive relief evaluates irreparable injury to the plaintiff,

inadequacy of legal remedies, the balance of injuries, and the public interest. E.g., Mova Pharm.

Corp. v. Shalala, 140 F.3d 1060,  1066 (D.C. Cir. 1998).  The traditional test does not apply,

however, where Congress has explicitly commanded the specific result being sought, in a manner

that admits of no exception.  See TVA v. Hill, 437 U.S. 153, 173 (1978);  United States v.

Microsoft, 147 F.3d 935, 943-44 (D.C. Cir. 1998)  In such cases, Congress itself has determined the

balance of hardships and the public interest.  Id. If the purpose of the legislation is thwarted by

failure to comply, and the legislation specifically authorizes injunctive relief, then an injunction

must issue.  Id. "Once Congress, exercising its delegated powers, has decided the order of

priorities in a given area, it is for the courts to enforce them when enforcement is sought. Courts

of equity cannot, in their discretion, reject the balance that Congress has struck in a statute."

United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483, 497 (2001).

Here, Congress has unquestionably commanded the result that plaintiffs seek.  As fully

discussed above, Congress has explicitly commanded that EPA publish attainment/reclassification

determinations within 6 months of the attainment date, and that EPA take final approval/disapproval

action within a maximum of 18 months of plan submittal.   Further, the Administrator's failure to act

clearly thwarts the statutory purpose. Congress laid out a precise schedule for implementation of the Clean Air Act to ensure that public health would be protected. It required that areas failing to attain standards by the deadline for their classification be promptly subject to the more stringent pollution control requirements for areas with higher classifications. It further required that EPA act promptly to disapprove clean air plans that fail to meet the Act's requirements, so as to set in motion the sanction clocks and other measures to induce corrective plans. These purposes are plainly defeated when EPA refuses to make or publish the required determinations and approval/disapproval actions, allowing areas that missed attainment deadlines and failed to adopt adequate plans to avoid the additional pollution controls mandated by Congress.

In addition, the Clean Air Act specifically provides for injunctive relief in situations like this. The Act's citizen suit provision allows suit by any person against the EPA Administrator in U.S. District Court where there is an alleged failure of the Administrator to perform a nondiscretionary act or duty. 42 U.S.C. §7604(a)(2). It further specifically authorizes the District Court in such cases "to order the Administrator to perform such act or duty." Id. §7604(a). Because the Administrator has failed to perform duties explicitly mandated by Congress, and because the Act expressly provides for injunctive relief to enforce those duties, the Court can and should order compliance. A balancing of the equities is neither necessary nor appropriate. Where, as here, Congress has "categorically mandated" that specified action be taken by a date certain, "the only question for the district court to answer is whether the agency failed to comply with that deadline." Sierra Club v. Thomas, 828 F.2d 783, 791 (D.C. Cir. 1987).

**B. An injunction is also warranted under the traditional test**

Even if the traditional test for injunctive relief applies, it is clearly met in this case. First, there is no remedy at law. The duties at issue are statutory, and the Act specifies that the remedy is via citizen suit for injunctive relief. 42 U.S.C. §7604(a).

Second, plaintiff is irreparably harmed by the Administrator's noncompliance. Sierra Club is a non-profit organization dedicated to environmental protection, and has more than 15,000 members in the Washington area. Exh.2. Their health and welfare is profoundly threatened by EPA's failure to take steps mandated by the Act to control ozone pollution in the air they breathe. As noted above, the Washington area suffers from dangerous levels of ozone pollution, presenting an immediate and substantial health risk to Club members. In the summer of 2002, the Washington area recorded the most days of unhealthful air due to ozone pollution in more than a decade. Exh. 10. The air is so polluted that Club members limit their outdoor activity and that of their children. Exhs. 3, 4, 5. Ozone pollution at these levels increases the risk to Club members and others of asthma attacks, lung damage, and emergency room visits. Exh. 6. EPA's failure to take the actions sought herein unlawfully delays measures required by the Act to remedy such dangerous levels of pollution.

The Administrator's noncompliance also irreparably injures the informational and procedural rights of Sierra Club and its members. Federal law guarantees that the Administrator will make timely, public determinations of whether each nonattainment area has attained the ozone standard, and whether state plans for such areas meet all the requirements of the Act. 5 U.S.C. §553; 42 U.S.C. §7410(k)(2)& (3). Among other things, EPA's failure to make these determinations deprives Sierra Club members of important information about the air they breathe and the adequacy of clean air plans for their community. Further, the EPA actions sought herein are

prerequisites for triggering further key steps to address ozone pollution - e.g., reclassification to severe, a mandate for preparation and submission of additional state plans, and mandates for federal implementation plans (FIPs) and sanctions if the state fails to act.[5]  The Act gives Sierra Club the right to participate in the development of such plans, and to file citizen suits if such plans are not timely adopted or enforced.  See 42 U.S.C. §§ 7410(a)(2), 7410(c), 7509, 7604.  EPA's failure to make the determination that triggers these planning duties therefore causes plaintiff procedural injury under the Act.

Thirdly, the balance of equities and public interest overwhelmingly support injunctive relief. Ozone pollution presents a significant health threat to the 3.9 million people living in the Washington area.  The threat is particularly great to the more than 250,000 people with asthma in the area.  Given that ozone pollution repeatedly reaches unhealthful code red levels, and the air is so dirty that children are repeatedly warned to limit outdoor play, the public interest strongly favors enforcement of federal clean air mandates.   Moreover, the Act sets forth public policy on this matter in clear and explicit terms, by requiring the Administrator to make attainment/reclassification determinations and take approval/disapproval actions by specific deadlines, all of which passed long ago.  The purpose of these requirements - to protect human health - is of the highest possible public importance.

In contrast, the Administrator cannot possibly claim any harm from being ordered to perform her statutory duties.  The actions sought here are straightforward ones.  The attainment and reclassification determinations simply require EPA to review the available air quality data,

---

[5] Of course, the EPA actions sought herein are the only possible triggers for sanction or FIP clocks.  For example, the complaint in NRDC v. Whitman, No. 99-2976 (D.D.C. filed 11/8/01) alleges that sanction and FIP clocks were triggered by prior EPA findings.

determine whether it shows compliance with the standard, and if it does not show compliance, to announce reclassification of the area to "severe." Similarly, the approval/disapproval actions here are dictated by the D.C. Circuit's decision vacating EPA's prior approval action. That Court specifically held that portions of the ozone plans for the Washington area did not meet all the applicable requirements of the Act – specifically, the requirements for a demonstration of timely attainment, for meeting rate of progress requirements in years after 1999, for adoption of all reasonably available control measures, and for adoption of contingency measures. 294 F.3d at 160-64. Pursuant to §110(k)(3) of the Act, EPA must therefore disapprove these portions of the plans. 42 U.S.C. §7410(k)(3)("If a portion of the plan revision meets all the applicable requirements of this chapter, the Administrator may approve the plan revision in part and disapprove the plan revision in part"). This is not a matter for further delay, debate or deliberation.

Judicial relief is urgently needed in light of EPA's long history of illegal delay and inaction in this matter. The Act required the states to submit their serious area attainment and rate of progress plans to EPA by November 15, 1994, and required EPA to approve or disapprove them within 18 months thereafter – i.e., by May 15, 1996. Contrary to these explicit statutory deadlines, EPA allowed the states to delay submittal of their plans until years later, and did not act on those submittals until January 2001 – nearly **five years** past the timeframe required by Congress and almost two years **after** the date by which the plans were to be fully implemented and the standard met. EPA acted at that late date only after being sued by Sierra Club and others in a separate case before this Court that sought to compel promulgation of a federal clean air plan because of the lack of approved state plans. NRDC v. Whitman, No. 99-2976 (CKK) (D.D.C.).[6] Further, EPA

---

[6] This Court entered a consent decree in that case that, among other things, required EPA to propose a federal implementation plan for the Washington ozone nonattainment area unless the

knew full well that its approval of the state plans in January 2001 was legally flawed. The agency itself conceded that its approval of an attainment date extension for the area – on which approval of the plans depended – conflicted with the literal terms of the Act. 66 Fed. Reg. 591 (conceding that provisions of the Act "on their face" did not allow for the extension). EPA cannot and should not be allowed to compound that illegality by delaying any further the action that was required by the Act the first place – namely, reclassification of the area to severe and disapproval of the state's plans.

### C. The injunction should direct EPA to publish final attainment/reclassification determinations by January 27, 2003, and final approval/disapproval action within 120 days of the Court's order

When Congress "categorically mandate[s]" that EPA meet explicit deadlines, EPA is "deprive[d] of all discretion over the timing of its work." Sierra Club v. Thomas, 828 F.2d 783, 791 (D.C. Cir. 1987). Violations of such statutory deadlines should be corrected at the "earliest possible date," using all available means. Delaney v. EPA, 898 F.2d 687, 691 (9th Cir. 1990)(citation omitted). The Supreme Court has ruled that Congress intended the Clean Air Act's nonattainment provisions to strictly limit EPA's discretion. Whitman v. American Trucking Assns., 531 U.S. 457, 484-85 (2001).

With respect to the attainment/reclassification determination, Sierra Club is informed by EPA counsel that, on or about November 4, 2002, EPA's Regional Administrator signed a proposed determination that the Washington area did not timely attain the ozone standard and must therefore be reclassified to severe. According to the National Archives and Records

---

Administrator signed a notice fully approving state plans for the area by December 15, 2000. NRDC v. Whitman, No. 99-2976, Consent Decree entered 6-12-00, as amended 11-6-00. EPA's January 3, 2001, Federal Register Notice approving the Washington area ozone plans was signed on December 15, 2000. 66 Fed. Reg. at 631.

Administration web site, this proposal is slated for Federal Register Publication on November 13, 2002.  http://www.archives.gov/federal_register/public_inspection/public_inspection_list .html#E .  The Federal Register notice will allow 30 days for public comment.  Assuming that publication occurs as scheduled, Sierra Club proposes that the Court direct EPA to make its final attainment/reclassification determination by January 27, 2003 – i.e., within 45 days of the close of public comment on the proposal.  This is essentially the same schedule ordered by this Court for publication of a final attainment/reclassification determination in the St. Louis case.  Sierra Club v. Browner, 130 F. Supp.2d 78,  95-96 (D.D.C. 2001)(where public comment on proposal had already been completed, EPA was ordered to publish final attainment/reclassification determination for St. Louis within 45 days).   More recently, this Court ordered EPA to make an attainment/reclassification determination for the Birmingham, Alabama area, on a schedule that required final EPA action within 75 days of Federal Register proposal.  Sierra Club v. Whitman, No. 00-2206 (D.D.C. July 10, 2002)(CKK), Memorandum Opinion at 12-13.   There is no reason to allow any more time here.

Likewise, the Court should give EPA no more than 120 days to publish its final approval/disapproval actions for the Washington area.  Specifically, the Court should order EPA to propose such action within 45 days of the Court's order, allow 30 days for public comment, and publish final agency action within 45 days of the close of comment.   Again, these time frames track those ordered by this Court for EPA to make attainment/reclassification determinations for Birmingham and St. Louis.  Specifically in the Birmingham case, the Court ordered EPA to publish a proposal within 45 days, allow 30 days for public comment, and publish final action 45 days thereafter.  Id.

The timetables proposed above provide more than enough time for EPA to perform what are essentially ministerial acts. The determination of whether an area has met the standard is a straightforward matter of comparing the reported air quality monitoring data with the standard. 40 C.F.R. §50.6. The air pollution data upon which EPA must base such determinations is available in the Agency's own database, which is a matter of public record. See http://www.epa.gov/air/data/ monvals.html. If the determination is that the area did not timely attain, the required reclassification (in this case, to "severe" – see note 1 *supra*) is dictated by the statute: there is no need for agency study or exercise of discretion on the matter.

Likewise, the approval/disapproval action merely requires the agency to disapprove those portions of the plans that the D.C. Circuit expressly found did not meet the requirements of the Act. This is a straightforward matter of proposing and finalizing disapproval for the reasons set forth in the D.C. Circuit opinion. The inadequacy of the plans has been clearly and finally adjudicated, and therefore the agency need not delve further in the merits of the previously submitted plans.

The time frames proposed here, and adopted by the Court in the Birmingham and St. Louis cases, are more than ample for EPA to complete these ministerial tasks. EPA has been required to complete more complex actions in the same or even less time. See 42 U.S.C. §7408(a)(1)(giving Administrator 30 days to publish a list of pollutants for which air quality criteria are needed); 42 U.S.C. §7409(a)(1)(A) (requiring Administrator to publish proposed national standards within 30 days); New York v. Ruckelshaus, 21 Env't Rptr. Cas. (BNA) 1721, 1724 (D.D.C. 1984)(ordering EPA to respond within 60 days to petition regarding interstate air pollution); Sierra Club v. Edwards, 19 Env't Rptr. Cas. (BNA) 1357, 1367 (D.D.C. 1983)(ordering EPA to submit report to Congress within 60 days); Environmental Defense Fund v. Gorsuch, 17 Env't Rptr. Cas. (BNA) 1099, 1102 (D.D.C. 1982)(ordering EPA to publish National Contingency Plan within 90 days).

The case for a prompt compliance schedule is particularly compelling given the deplorable history of EPA delay and evasion of statutory duties in this matter.   As detailed above, the agency has allowed the states to miss deadline after deadline for submitting adequate ozone plans for the region, has failed repeatedly to take timely action on state plan submittals, and has failed to make attainment and reclassification determinations that were due more than two years ago.   When the agency finally acted it approved plans so deficient that the approval was vacated by the D.C. Circuit.   Today, more than four months after that vacatur decision, EPA has still taken no final action to disapprove the deficient plans, to require corrective action by the states, or to make its long overdue attainment/reclassification determinations.   As a result, more than six years after the date contemplated by Congress, the Washington area *still* does not have an approved plan to attain the ozone standard.   EPA delays and inaction have completely eviscerated the precise schedule set out by Congress.   Meanwhile, children, asthmatics and others in the Washington face another summer of ozone pollution that will put them at risk of asthma attacks, emergency room visits, lung damage, and other serious health impacts.   The time has come to put an end to EPA delays.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully ask the Court to enter an order granting their application for a preliminary and permanent injunction.[7]

---

[7] In light of Sierra Club's request for advancement and consolidation of the request for permanent injunction with the request for preliminary injunction, the Rule 65(c) requirement for posting of security is not applicable.   Even if it were, no security would be warranted in this case because the suit merely seeks to compel action that EPA must eventually take in any event. See C. Wright& A. Miller, Federal Prac. & Proced. §2954 at 292-93 (2d ed. 1995)( court may dispense with security if no risk of monetary loss to defendant).   See also Citizens Alert Regarding the Environment v. United States Department of Justice, 1995 U.S. Dist. LEXIS 18619 (D.D.C. 1995)(only nominal security is required where public interest groups seek enforcement of environmental laws).

DATED this _13_ day of November, 2002.

Respectfully submitted,

David S. Baron (D.C. Bar # 464222)
Earthjustice
1625 Massachusetts Ave., N.W., Suite 702
Washington, D.C.  20036
(202) 667-4500

Counsel for Plaintiff